

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2004

# Custer v. Penn State Geisinger

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2185

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Custer v. Penn State Geisinger" (2004). *2004 Decisions.* Paper 572.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/572

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2185

CHRISTOPHER C.L. CUSTER, M.D.,

Appellant

v.

PENN STATE GEISINGER HEALTH SYSTEM;
GEISINGER MEDICAL GROUP-LEWISTOWN,
PENN STATE GEISINGER CLINIC
t/d/b/a

PENN STATE GEISINGER HEALTH
GROUP-LEWISTOWN

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 00-cv-01860)
District Judge:  Honorable John E. Jones, III

Submitted Under Third Circuit LAR 34.1(a)
April 12, 2004

Before:  RENDELL, COWEN and LAY*, <u>Circuit</u> <u>Judges</u>.

(Filed June 30, 2004)

* Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for
the Eighth Circuit, sitting by designation.

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>.

Appellant Christopher Custer seeks reversal of the District Court's grant of summary judgment for defendants Geisinger Health System, Geisinger Medical Group—Lewistown, Geisinger Health Group—Lewistown (collectively referred to as "Geisinger"), based on the Court's determination that Custer's claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117, was barred by a release he signed pursuant to the settlement of a prior medical malpractice suit brought against Geisinger and various physicians employed by Geisinger. We have jurisdiction under 28 U.S.C. § 1291. We will reverse and remand.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. Appellant Custer was employed by Geisinger as a practicing obstetrician/gynecologist between 1986 and 1991, at which point he became severely ill with meningitis and required hospitalization. Subsequently, Custer commenced legal action alleging negligence against Geisinger and various physicians employed by Geisinger for injuries suffered due to their failure to promptly and effectively diagnose and treat his illness. On January 4, 1996, Geisinger rehired Custer as a staff physician on a part-time basis for a six-month probationary period. In addition to

the probationary status of his employment, Custer was informed in April of 1996 that he was required to perform a second residency program at Geisinger's medical facility. On May 9, 1996, Custer settled the malpractice case and released Geisinger and various physicians employed by Geisinger from further action arising from or related to that case. The release provided in pertinent part:

> [T]he undersigned do fully release and discharge . . . Geisinger Medical Center [and] all other persons, associations, and corporations whether or not named herein . . . from any or all causes of action, claims or demands of whatsoever kind on account of all known, and unknown injuries, losses and damages allegedly sustained by [Custer] and specifically, from any claims . . . otherwise as a result of, from, or in any way connected with all medical health care services rendered by the above named health care providers, and on account of which Legal Action was instituted by [Custer] in the Court of Common Pleas of Mifflin County, Pennsylvania.

Custer's position was then extended after his six-month probationary period at Geisinger concluded. But in January of 1999, Custer was terminated from his job. Custer then filed a complaint against Geisinger alleging violations of the ADA and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 *et.seq.*, and specifically averring that Geisinger and its employees, agents and servants discriminated against him.[1] However, the District Court held that Custer's ADA claim was barred by the release he had signed following settlement of the malpractice claim and granted summary judgment

---

[1] After granting summary judgment against Custer as to the ADA claim, the District Court declined to exercise its supplemental jurisdiction over Custer's claim under the Pennsylvania Human Relations Act.

for Geisinger.[2]  Custer timely appealed.

We exercise plenary review over a district court's grant of summary judgment and review facts in the light most favorable to the nonmoving party, here Custer.  Roberts v. Fleet Bank, 342 F.3d 260, 264 (3d Cir. 2003).

The parties do not quarrel over the applicable law.  As the District Court correctly observed, the law of Pennsylvania governs the interpretation of the release.  Under Pennsylvania law, general releases such as that signed between Custer and Geisinger are interpreted as contracts that do not ordinarily bar a claim that accrues after the execution of a release.  Restifo v. McDonald, 230 A.2d 199 (Pa. 1967).  However, parties may choose to relinquish even those claims accrued after the signing of a release so long as that intention is clearly expressed in the agreement.  Three Rivers Motor Co. v. Ford, 522 F.2d 885, 896 (3d Cir. 1975) ("Pennsylvania law is clear that where parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims.").

The District Court concluded that the express provisions of the release should be read to preclude Custer's ADA claim.  We disagree and find that the ordinary meaning of the release should not be so construed.  The pertinent provision concerns injuries, known

---

[2] On appeal, Geisinger raises several other grounds to support summary judgment, including a challenge to Custer's status as a "qualified individual" under the ADA and statute of limitations.  We leave it for the District Court to pass on these other defenses in the first instance.

or unknown, which were "allegedly sustained" by Custer "specifically from any claims or otherwise as a result of, arising from, or in anyway connected *with all professional medical health care services rendered by [Geisinger]. . . .*" App. at 55 (emphasis supplied). First, we note that "sustained" is in the past tense, indicating that the provision concerned injuries, whether known or unknown, that had already been suffered at the time of the release. Geisinger's allegedly discriminatory conduct that led to Custer's termination nearly three years later was not a harm that had been already sustained. Geisinger's interpretation would require us to alter the phrase to read "losses and damages allegedly sustained or that may be sustained in the future." This we decline to do. See Bowersox Truck Sales & Svc. v. Harco Nat'l Ins. Co., 209 F.3d 273, 279–80 (3d Cir. 2000) (rejecting argument that would "have us reword the release and insert the future tense that is now absent").

Further, Custer's claim of discrimination is not in "anyway connected" to Geisinger's provision of medical services. While Custer's earlier malpractice claim and subsequent settlement concern Geisinger's role as a provider of medical care, his ADA claim concerns Geisinger's role as his employer. Moreover, the above quoted phrase from the release further specifies that Custer was to be precluded from raising a claim "connected with all medical professional health care services rendered by [Geisinger], and on account of which Legal Action was instituted in the Court of Common Pleas of Mifflin Co., PA, Docket No. 1312-93." Id. Thus, the provision is expressly limited to

- 5 -

those claims connected to Custer's medical malpractice action which he filed in the Court of Common Pleas in December of 1994, nearly a year before Custer was even rehired by Geisinger, and four years before his allegedly discriminatory termination in 1999.[3]

In support of its reading of the release, the District Court reasoned that Custer "was aware, or at least should have known that an ADA claim could arise." For instance, the Court found that Custer was "dissatisifed with his treatment by the Defendants as early as 1995 as it related to his attempts to regain employment with them." Yet as the District Court also noted, whatever troubles Custer naturally may have had in seeking to be rehired by the entity that he was suing, Geisinger did eventually offer Custer employment. That he was already working at Geisinger when the settlement was executed does not undermine Custer's claim that he had no discriminatory employment conduct about which to complain at the time he signed the release.

The District Court was also persuaded by Custer's familiarity with the ADA and its protections when he signed the release. Custer was then a medical professional with a severe disability. His knowledge of the landmark discrimination law is therefore

---

[3]The District Court also relied on a related provision of the release that limited the scope of the settlement to "any further injuries, losses and damages which arise from, or are related to the occurrence set forth in the Legal Action noted above." In one sense, it is of course true, as the District Court observed, that absent his contraction of meningitis, Custer would neither have a disability nor an ADA claim. But it does not follow that Geisinger's alleged discriminatory conduct therefore "arose from" the previous legal action. As discussed above, Custer's employment discrimination claim did not arise from nor was it related to the "occurrence" of Geisinger's allegedly negligent medical care.

unsurprising but immaterial. Custer's awareness of the anti-discrimination laws in general does not support the District Court's conclusion that Custer "should have been aware" that Geisinger would later discriminate against him.

Ultimately, it our duty to strictly construe releases "so as to avoid the ever present possibility that the releasor may be overreaching." Bowersox, 209 F.3d at 280 (quoting Restifo, 230 A.2d at 201). The language of the release does not indicate a clear intention to release any and all future claims no matter how or for what reason those claims may have accrued. Construed strictly, the release bars claims related to the earlier negligence suit and should not have been read to preclude Custer's ADA claim.

Accordingly, we will reverse and remand this matter for further proceedings in accordance with this opinion.

_____